UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:22-cv-24268-JEM/Becerra

RETONYA SCREEN,

    Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security Administration,

    Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS MOTIONS FOR SUMMARY JUDGMENT[1]**

**THIS CAUSE** came before the Court on the Parties' Cross Motions for Summary Judgment. ECF Nos. [8], [14]. Plaintiff, Retonya Screen ("Plaintiff" or "Screen"), filed her Motion for Summary Judgment ("Plaintiff's Motion") arguing that the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence because the vocational expert's testimony upon which the ALJ relied contained "vastly overstated" job numbers. ECF No. [8] at 9. Defendant, the Acting Commissioner of Social Security ("Defendant" or "Commissioner"), filed her Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law ("Defendant's Motion"), arguing that the correct legal standards were applied, and the ALJ's decision is supported by substantial evidence. ECF No. [14] at 1. The Court must now determine whether the decision reached by the ALJ is supported by substantial evidence and whether the correct legal standards were applied. After a review of

---

[1] The Honorable Jose E. Martinez, United States District Judge, referred this matter to the undersigned, pursuant to the administrative procedures of the Court. ECF No. [2].

Plaintiff's Motion, Defendant's Motion, the record, and all relevant authorities, it is hereby **RECOMMENDED** that Plaintiff's Motion, ECF No. [8], be **DENIED**, and Defendant's Motion, ECF No. [14], be **GRANTED**.

## I. BACKGROUND

On September 3, 2020, Plaintiff filed applications for (1) a period of disability and disability insurance benefits; and (2) supplemental security income benefits. R. at 20. Plaintiff alleged a disability onset date of November 29, 2019. *Id.* Plaintiff was born on November 28, 1969 and was 50 years old on the alleged disability onset date. *Id.* at 30. The Social Security Administration ("SSA") initially denied Plaintiff's application on January 6, 2021, and again on reconsideration on June 17, 2021. *Id.* at 20. After the claim was denied on reconsideration, Plaintiff filed a request for hearing. *Id.* On February 1, 2022, Plaintiff appeared telephonically for a hearing before the ALJ (the "ALJ Hearing"). *Id.* A vocational expert, Scott E. Brown, testified at the ALJ Hearing. *Id.* On June 1, 2022, the ALJ denied Plaintiff's application. *Id.* at 31–32.

Thereafter, Plaintiff requested review of the ALJ's decision before the Appeals Council. *Id.* at 12-–. On November 1, 2022, Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council. *Id.* at 6–8. Having exhausted all available administrative remedies, and pursuant to 42 U.S.C. § 405(g), Plaintiff filed the instant action. ECF No. [1].

### A. The ALJ Hearing

At the ALJ Hearing, Plaintiff testified that she is unable to perform her old job due to both physical and mental ailments. R. at 50–63. As to physical ailments, Plaintiff testified that she suffers from daily pain originating in her lower back and going down her left side to her calf and lower leg, where she experiences a "tingling, numb sensation." *Id.* at 52. She further testified that she experiences a burning sensation "under the bottom of [her] feet," and has to soak and elevate

her leg and "take [her] meds." *Id.* at 52–53. Screen testified that she cannot walk far without having to take a break, and she requires the assistance of a cane and brace. *Id.* at 54–55. As to mental ailments, Plaintiff testified that she experiences depression, primarily triggered by the death of her grandchild. *Id.* at 57–58. Screen says this has impacted her sleep, concentration, and memory. *Id.* at 58–59, 63.

As to past work, Plaintiff testified that she used to sell costume jewelry, phone cases, selfie sticks, and other similar items that she would buy in bulk and ship or personally deliver to customers. *Id.* at 48–50. Plaintiff testified it has "been a while" since she performed this work, and the record reflects that she "has not engaged in substantial gainful activity since November 29, 2019." *Id.* at 23, 50.

Vocational Expert Scott E. Brown (the "VE") testified at the ALJ Hearing. Plaintiff's counsel stipulated to the VE's qualifications. R. at 58. The VE categorized Plaintiff's past relevant work using the Dictionary of Occupational Titles ("DOT") and referred to the Specific Vocational Preparation ("SVP") rating. *Id.* at 63–64. The VE testified that Plaintiff's past relevant work is categorized as a "Peddler, DOT number . . . 291.457-018. Medium work with an SVP of 3." *Id.* at 64.

Based on Plaintiff's testimony and the evidence in the record, the ALJ asked the VE to consider a hypothetical individual of the same age, education, and work experience as Plaintiff, with the following limitations: this hypothetical individual could "perform light exertional activities"; "never climb a ladder, rope, or scaffold"; "occasionally perform other postural activities"; "perform simple and detailed tasks"; and have "[o]ccasional interactions with coworkers, supervisors, and the general public." *Id.* at 65–66. The questioning by the ALJ proceeded as follows based on this hypothetical:

3

> Q.  Given that hypothetical, Mr. Brown, could such an individual perform the claimants past work?
>
> A.  A person with those limitations, Your Honor, will not be able to perform the past work either as described or as generally performed. The exertional demands of that past work as well as the complexity, and the social interaction of that work, Your Honor, the DOT does not contemplate social interaction at work.  It does refer to social interaction by way of temperaments.  In the event that the Agency does not recognize those temperaments, in my experience working with individuals in this vocational environment, the social interaction with past work exceeds this RFC [(residual functional capacity)], Your Honor.  In all of those ways, the past work is not possible either as described or as generally performed.
>
> Q.  Given this hypothetical, is there other work that could be performed?
>
> A.  A person with those limitations, Your Honor, would be able to perform the duties of a folder, like in laundry department.  Folder DOT number is 369.687-018.  It's an SVP of 2, with light exertion.  There are approximately 23,000 of those positions nationally.  A person would be able to perform the duties of a laundry sorter.  Sorter DOT number is 361.687-014.  It's an SVP of 2, with light exertion.  There are approximately 22,000 of those positions nationally.  A person with those limitations would be able to perform the duties as a stock – a stock checker, apparel.  Stock checker, apparel DOT number is 299.667-014.  It's an SVP of 2 with light exertion.  There are approximately 25,000 of those positions nationally . . . .  The example positions are possible in that these are generally working with things as opposed to with people.  These are not cooperative jobs.  So, the social interaction for all of these jobs does not exceed that of the hypothetical limitation.  They are simple type work and those are the only diversions from the DOT that I can identify actual or perceived, Your Honor.

*Id.* at 65–67.

Plaintiff's attorney asked the VE how his opinion would be affected if the same individual had an additional limitation that they "would have to alternate their position every ten minutes from seated to standing, and would be off task more than 10% of the day . . . ." *Id.* a 67–68.  The VE testified that "[t]he limitation as stated would be intolerable in light that the Department of Labor Wage and Hour Division statistics for personal time, fatigue, and delay." *Id.* at 68.  Thus, the VE stated that "this limitation would reduce the rate of pursuit to less than full-time the way work is generally performed in the national economy . . . ." *Id.*  Given this limitation, the VE

4

testified that the past work is not possible," and he did not "have an alternative for that individual." *Id.*

Next, Plaintiff's attorney asked the VE how many days "an individual can be absent from work and still maintain employment" if that individual is "in the light, unskilled arena." *Id.* The VE replied that in his "experience working with individuals in various vocational environments," six total days per year of "excused or tolerable absences" are expected "in the private sector economy." *Id.* Moreover, "averaging more than four hours per month consistently over the course of the year . . . would reduce the rate of pursuit to less than full time the way work is generally performed in the national economy." *Id.* The VE testified he had "no jobs references" for an individual who was "absent . . . one day or more per month from work . . . ." *Id.* at 69.

Plaintiff's attorney then asked whether the example jobs proposed by the VE require a certain level of productivity. *Id.* The VE testified that "there isn't really a production requirement or a measured way of . . . . tracking the work," but they "generally [require] staying on task and being productive throughout the day." *Id.* He added that "if a person's unsatisfactorily performing in those ways consistently, the best-case scenario for them would be to . . . put them at part-time, counsel them, find out . . . what's going on," and "bring them back full-time when they're feeling better . . . ." *Id.* at 70. Plaintiff's counsel asked how the individual's employability would be affected if they "had to be counseled by a supervisor to stay on task every half an hour during their shift," and the VE replied that "that would be . . . too much" and would constitute "an accommodated . . . workplace for that individual." *Id.* at 71. The example jobs contemplate "up to 30 days or so worth of . . . training," and short of working at an accommodated workplace, the hypothetical individual "would end up in a writeup" if constantly reminded to stay on track or work faster. *Id.* at 72. When asked how many times before being terminated the individual could

5

respond inappropriately, due to their mental health condition, to criticism of their work performance, the VE responded that they would receive a verbal reprimand, "and then depending on the severity of the insubordination," they would get two other writeups before being terminated. *Id.* at 72–73.

Plaintiff's attorney did not ask any questions, nor did he offer any information, regarding the number of jobs that the VE testified were available to Plaintiff in the national economy.

**B.      Statutory and Regulatory Framework**

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. at § 423(d)(3). Plaintiff "bears the burden of proving that [she] is disabled," and she "is responsible for producing evidence in support of [her] claim." *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ is required to follow a "five-step sequential evaluation process" to determine whether a claimant is disabled. *See Frame v. Comm'r of Soc. Sec.*, 596 F. App'x 908, 910 (11th Cir. 2015) (quoting 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1)). At step one, the ALJ must determine whether the claimant is "currently engaged in substantial gainful activity"; at step two, the ALJ must determine whether the claimant suffers from "severe"[2] impairment(s); at step three,

---

[2] An impairment is considered "severe" if it significantly limits a person's physical or mental ability to perform basic work activities "for a continuous period of at least twelve months," or is "expected to result in death." 20 C.F.R. §§ 404.1509, 404.1522.

6

the ALJ must determine whether the claimant suffers from an impairment that meets, or medically equals, a listed impairment found under 20 C.F.R. pt. 404, subpt. P, app. 1; at step four, the ALJ must determine whether the claimant is able to return to her past relevant work given her Residual Functional Capacity ("RFC");[3] and if not, at step five, the ALJ must determine whether the claimant is able to perform other work as it exists in the national economy, given her age, education, RFC, and work experience. *Id.* While "[a]n affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability[,]" "[a] negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (citing 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the [defendant] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

    C.    **The ALJ Decision**

On June 1, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 29, 2019, the alleged onset date. R. at 31–32. In reaching her decision, the ALJ applied the five-step sequential evaluation process that must be used when considering these types of claims. *Id.* at 23–31; *see* 20 C.F.R. § 416.920(a); *see also Frame*, 596 F. App'x at 910.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 29, 2019, the alleged onset date. R. at 23. At step two, the ALJ determined that Plaintiff suffers from the following "severe impairments": degenerative disease of

---

[3] RFC is defined as "the most [a claimant] can still do despite [a claimant's physical and mental] limitations." 20 C.F.R § 404.1545(a)(1).

7

cervical and lumbar spine, Major Depressive Disorder, and opioid use disorder. *Id.* The ALJ found that these "medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28." *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that "meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." *Id.*

At step four, the ALJ formulated Plaintiff's RFC. *Id.* at 25–29. The ALJ found that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never climb ladders, ropes, or scaffolds," although she "can occasionally perform other postural activities." *Id.* at 25. The ALJ noted that Plaintiff "is limited to simple and detailed tasks" and "can have occasional interactions with coworkers, supervisors and general public." *Id.* Based on the RFC, the ALJ found that Plaintiff is not able to perform her past relevant work as a peddler. *Id.* at 29–30.

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.* at 30. Specifically, the ALJ, relying on the VE's testimony from the ALJ Hearing, noted the following jobs:

| Job Title | DOT Number | Exertional Level | Skill Level (SVP) | Approximate Number of Jobs Existing |
|---|---|---|---|---|
| Folder | 369.687-018 | Light | Unskilled (2) | 23,000 Nationally |
| Laundry Sorter | 361.687-014 | Light | Unskilled (2) | 22,000 Nationally |
| Stock Checker Apparel | 299.667-014 | Light | Unskilled (2) | 25,000 Nationally |

*Id.* at 31. The ALJ "determined that the vocational expert's testimony is consistent with the information contained in the" DOT, and "[b]ased on the testimony of the vocational expert, [she]

conclude[d] that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 29, 2019, through the date of th[e] decision . . . ." *Id.*

### D. The Instant Motions

Plaintiff's challenge centers around one issue: whether, at step five, the VE's testimony regarding the number of jobs available constituted substantial evidence upon which the ALJ could rely. ECF No. [8] at 8–20. First, Plaintiff argues that the VE's testimony regarding job numbers for the positions at issue (folder, laundry sorter, and stock checker apparel) is unreliable and overstated. *Id.* at 9. Plaintiff comes to this conclusion by performing her own job market analysis, noting that the number of positions obtained through both Job Browser Pro (a software that Plaintiff alleges is frequently relied upon in this context) and through an equal distribution, pro rata calculation of positions from the Occupational Employment and Wage Statistics published by the United States Board of Labor Statistics ("OEWS"), differs substantially from the VE's estimate. *Id.* at 10–13. Plaintiff suggests that of the 70,000 total jobs posited by the VE as existing in the national economy, up to 66,694 positions may not actually exist. *Id.* at 16. Because of the discrepancy in job numbers, and the fact that the VE provided no information about his methodology, Plaintiff asserts that the VE's testimony cannot be considered substantial evidence. *Id.* at 11–15. In addition, Plaintiff argues that the ALJ had an affirmative duty to resolve all "apparent conflicts" between the VE's testimony and the DOT, which she failed to do, because the job numbers presented by the VE are inaccurate. *Id.* at 17–19.

In response, Defendant argues that the ALJ's decision was supported by substantial evidence. ECF No. [14] at 4. As an initial matter, because Plaintiff did not challenge the VE's testimony at the ALJ Hearing or present the Job Browser Pro job numbers upon which she now relies, these proffered job numbers are not part of the record, and Defendant argues they cannot be considered by the Court. *Id.* at 7–9. Moreover, Defendant claims that Plaintiff "fails to show anything in the VE's actual testimony evidencing error or misstatement." *Id.* at 11. Defendant contends that the ALJ only has an "affirmative duty to '[a]sk the VE or vocational specialist (VS) if the evidence he or she has provided conflicts with information provided in the DOT . . . .'" *Id.* at 10 (quoting SSR 00-40) (alteration in original). By contrast, there is no apparent conflict, and no affirmative duty to resolve such conflict, when the discrepancy is one between "the VE's testimony about the number of available jobs in the national economy and information [Plaintiff] provided after the ALJ hearing from Job Browser Pro." *Id.*

## II.   ANALYSIS

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In reviewing the ALJ's decision, a court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment' for that of the Commissioner." *Matos v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). Instead, so long as the ALJ's findings are supported

by substantial evidence, they are conclusive, and the Court must defer to the ALJ's decision. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Comm'r of Soc. Sec.*, 808 F.3d 818, 822 (11th Cir. 2015). Even if the Court finds that "the evidence preponderates against the [Commissioner's] . . . findings," the Court must affirm the Commissioner's decision if the decision is supported by substantial evidence. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In this respect, "the ALJ has a basic obligation to develop a full and fair record[,]" given that a hearing before an ALJ is not an adversarial proceeding. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). The Court also reviews the ALJ's decision "to determine whether the correct legal standards were applied." *Id.* (citing *Martin*, 894 F.2d at 1529). However, "'no . . . presumption of validity attaches to the [ALJ's] conclusions of law . . . .'" *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

While the claimant bears the burden of proof in the preceding steps, at step five, "[o]nce the finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do." *Foote*, 67 F.3d at 1559 (citing *Gibson*, 762 F.2d at 1518). If the Commissioner is able to show other work exists in the national economy which the claimant can perform, "the burden shifts back to the claimant to prove she is unable to perform the jobs suggested[.]" *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)) (alteration in original).

At step five, the step at issue here, "the critical inquiry . . . is whether jobs exist in the national economy in significant numbers that the claimant could perform in spite of [her] impairments . . . ." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360 (11th Cir. 2018). "Work which 'exists in the national economy' means 'work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country.'" *Goode*, 966

11

F.3d at 1280 (quoting 42 U.S.C. § 423(d)(2)(A)). Thus, at step five, the ALJ must determine both whether the claimant can perform other work as it exists in the national economy given her impairments, and whether such work exists in "significant numbers." *Id.*

In determining whether the claimant can perform work that exists in significant numbers in the national economy, "the ALJ can consider both jobs data drawn from the DOT as well as from the testimony of the VE . . . ." *Washington*, 906 F.3d at 1360. VEs use data from the DOT, the Standard Occupational Classification system (SOC), the Occupational Employment Quarterly (OEQ), and other sources, including databases, to estimate the number of jobs available in the economy that a claimant can perform. *See Goode*, 966 F.3d at 1281.

Plaintiff's Motion is premised on proffered job numbers that Plaintiff presents now, for the first time, in her Motion. ECF No. [8]. Specifically, Plaintiff argues that the VE's testimony regarding job numbers for the positions at issue (folder, laundry sorter, and stock checker apparel) is unreliable and overstated. *Id.* at 9. Based on calculations that Plaintiff makes using Job Browser Pro and through an equal distribution, pro rata calculation of positions from the OEWS, Plaintiff contends that (1) the number of jobs available differs considerably from the VE's estimate, so much so that the number of jobs available in the national economy are not significant; and (2) her calculation shows a conflict between the VE's testimony and the calculations she submits. *Id.* at 9–13. Because the VE's job numbers are not reliable and conflict with the estimates she proposes, Plaintiff urges the Court to find that the ALJ's decision is not supported by substantial evidence, and that the ALJ erred by not addressing this conflict. *Id.* at 19–20.

Plaintiff's argument fails because it is premised on Plaintiff's job numbers that were not before the ALJ. It is well-settled that in determining "whether the ALJ's decision was supported by substantial evidence, . . . 'we will only look to the evidence actually presented to the ALJ.'"

12

*Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009–10 (11th Cir. 2020) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998)); *see also Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 320 (11th Cir. 2021) ("[W]e must look only to the evidence that was presented to the ALJ, and not evidence that was subsequently presented to the district court or this Court.") (citing *Falge*, 150 F.3d at 1323). Because the Court will not "'reweigh the evidence'" or "'substitute [its] judgment' for that of the Commissioner," it is improper to consider Plaintiff's new job numbers at this stage, as they were neither presented to nor considered by the ALJ. *See Matos*, 2022 WL 97144, at *3 (quoting *Winschel*, 631 F.3d at 1178).

In addition, because the job numbers proposed now were not before the ALJ, they could not have created an "apparent conflict" that would require any sort of resolution prior to the ALJ's decision. Indeed, Plaintiff's reliance on *Goode v. Commissioner of Social Security* is misplaced. 966 F.3d 1277 (11th Cir. 2020). In *Goode*, the Court found that the VE incorrectly matched a DOT code to an SOC group. *Id.* at 1282. Specifically, while the VE testified that the plaintiff could perform the job of a bakery worker, which corresponded with the SOC group "Production Workers, All Other," the VE incorrectly provided job number estimates from the SOC group "Food Processing Workers, All Other" instead. *Id.* The VE then provided the job number estimates from the entire SOC group of 65 positions within "Food Processing Workers, All Other," despite his testimony that the plaintiff could only perform one job therein—bakery worker. *Id.* at 1283. Thus, the estimate was overstated, possibly by a multiple of 65. *Id.* At the hearing, the plaintiff in *Goode* challenged the VE's methodology, pointing out that it was internally inconsistent and overstated. *Id.* at 1282–83. On appeal, the plaintiff in *Goode* argued that the ALJ failed to reconcile the conflict between the VE's testimony and the DOT/SOC, despite having an obligation to do so, and the Court agreed. *Id.* at 1282–85.

Plaintiff claims that the VE here committed the same error. *Id.* at 19. However, that can only be correct if the VE's calculations at Plaintiff's hearing were derived as Plaintiff proposes. The problem for Plaintiff, of course, is that the record is silent as to how the VE arrived at the job numbers. Therefore, Plaintiff is asking the Court to *assume* that the VE here did what the VE in *Goode* did. Critically, while the plaintiff in *Goode* challenged the numbers before the ALJ, and while the basis for the VE's numbers in *Goode* was part of the record before the ALJ, that is not true of the instant case.

Although the ALJ does have an obligation to cure an "unresolved conflict" between the VE's testimony and the DOT, the conflict must be apparent. *See* SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled."); *Washington*, 906 F.3d at 1356 ("After careful review, we conclude that, pursuant to the terms of the Ruling [in SSR 00-4P], and in light of the overall regulatory scheme that governs disability claims, the ALJs within the SSA have an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the DOT and resolve them."). In *Goode*, the VE's testimony was apparently inconsistent with the DOT (and the SOC) because the VE matched the relevant job in the DOT with the wrong job category in the SOC at the outset, and therefore any numbers flowing from that estimate were inherently incorrect. 966 F.3d at 1282. Such an error was apparent on the record and could have been independently verified by the ALJ with a review of the DOT and SOC. *Id.* By contrast, there was no challenge to the VE's testimony regarding the jobs existing in the national economy here. R. at 48–75. As such, the conflict only

14

arises if the Court accepts Plaintiff's theory as to how the number provided was ascertained.[4] Because there was no "apparent conflict" before the ALJ, and because Plaintiff's employment statistics cannot be considered now to retroactively create one, the ALJ did not fail to resolve any conflicts.

Although the Court cannot consider Plaintiff's proffered job numbers at this juncture, the question remains: was the VE's testimony substantial evidence upon which the ALJ could rely? Plaintiff argues that the VE's testimony is not reliable because "there is no objective evidence in the record *or in any outside source* that [the VE utilized] . . . a valid methodology that yields accurate and reliable results" in deriving the job numbers offered in his testimony. *See* ECF No. [8] at 15.

The portion of the VE's testimony at issue was provided in response to the ALJ's hypothetical, which the ALJ used to formulate the RFC at step four. *See* R. at 65–66. The ALJ asked the VE to consider whether an individual with the same limitations as Plaintiff could perform other work besides her past work, and the VE responded:

> A. A person with those limitations, Your Honor, would be able to perform the duties of a folder, like in laundry department. Folder DOT number is 369.687-018. It's an SVP of 2, with light exertion. There are approximately 23,000 of those positions nationally. A person would be able to perform the duties of a laundry sorter. Sorter DOT number is 361.687-014. It's an SVP of 2, with light exertion. There are approximately 22,000 of those positions nationally. A person with those limitations would be able to perform the duties as a stock – a stock checker, apparel. Stock checker, apparel DOT number is 299.667-014. It's an SVP of 2 with light exertion. There are approximately 25,000 of those positions nationally. . . . The example

---

[4] Indeed, the job numbers themselves *could not* be inconsistent with the DOT, or the SOC, because neither of those publications contain job numbers. *See Goode*, 966 F.3d at 1280; *see also Purdy v. Berryhill*, 887 F.3d 7, 14–15 (1st Cir. 2018) ("The DOT 'just *defines* jobs,' however; '[i]t does not report how many such jobs are in the national economy.'") (quoting *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 446 (2d Cir. 2012) (alterations in original)). Rather, the VE derives the job numbers from outside sources, matches them to the jobs within the DOT and SOC, and then synthesizes them using his own expertise before presentation to the ALJ. *See Goode*, 966 F.3d at 1280–84.

> positions are possible in that these are generally working with things as opposed to with people. These are not cooperative jobs. So, the social interaction for all of these jobs does not exceed that of the hypothetical limitation. They are simple type work and those are the only diversions from the DOT that I can identify actual or perceived, Your Honor.

*Id.* at 66–67. As Plaintiff correctly suggests, the VE provided job titles, codes, and final numbers—which the ALJ later interpreted to be the number of available jobs in the national economy—but no explanation of how he arrived at those estimates.

While the VE's testimony may be sparse, it is sufficient to constitute substantial evidence based on the undersigned's reading of the law in this Circuit. In *Valdez v. Commissioner of Social Security*, the Eleventh Circuit found that an ALJ's opinion was based on substantial evidence where the ALJ relied solely on a VE's testimony for employment statistics. 808 F. App'x at 1009–10. The plaintiff in *Valdez* proffered his own employment statistics for the first time at the district court level, as did the Plaintiff herein, and argued that because the VE's statistics were "extremely overstated" by comparison, the ALJ could not have relied on them as substantial evidence. *Id.* The plaintiff's counsel did not "object to the vocational expert's testimony. In fact, he stipulated that the vocational expert was qualified to testify." *Id.* at 1010. The Court declined to consider the plaintiff's new evidence, and found that the VE's testimony, which did not provide a basis for the calculation of job numbers, was sufficient. *See id.* at 1009–10. Indeed, the Court found that "[a]n ALJ may rely on the testimony of a vocational expert as substantial evidence." *Id.* at 1009.

Similarly, in *Bacon v. Commissioner of Social Security*, the Eleventh Circuit held that an ALJ's opinion was based on substantial evidence where the ALJ relied solely on a VE's testimony for employment statistics. 861 F. App'x at 321. In *Bacon*, the plaintiff also proffered new employment statistics at the district court level, which the Eleventh Circuit found to be inadmissible as they were not part of the record before the ALJ. *Id.* at 320. The Eleventh Circuit further noted that not only did plaintiff's counsel not "object to the VE's testimony or inquire

further into her methodology," but he "stipulated that the VE was qualified to testify." *Id.* at 320. The Eleventh Circuit explained that "[a]t [the plaintiff's] hearing, the *only* evidence presented to the ALJ regarding the availability of cleaner and polisher jobs was through the VE's testimony that there were 325,000 of them in the national economy," and because the evidence "was neither clearly and unmistakably wrong on its face, nor was it internally inconsistent and incomplete," the ALJ's step five finding, which relied on that testimony, was supported by substantial evidence. *Id.* at 320–21 (emphasis added).

Relying on both *Valdez* and *Bacon*, Courts within this District have found a VE's testimony regarding job numbers to be substantial evidence even when the basis for those calculations was not provided.[5]  In *Ramos v. Kijakazi*, the Court similarly rejected the plaintiff's "post-hearing research into the job data discussed by the VE" and held that an ALJ's decision was based on substantial evidence. No. 20-cv-23478, 2021 WL 5746358, at *7–*8 (S.D. Fla. Nov. 9, 2021), *report and recommendation adopted*, No. 20-cv-23478, 2021 WL 5743332, at *1 (S.D. Fla. Dec. 2, 2021).  The *Ramos* court noted that the Eleventh Circuit "'has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figure[s] provided by the Bureau of Labor Statistics in the [Occupational Employment Statistics]'

---

[5]  Whether the underlying data and methodology behind the calculations provided by a VE should be produced was at issue in *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019), where the Supreme Court declined to fashion any such rule.  The Supreme Court, in deciding that determinations such as these are to be made case-by-case, found that "[a]ssuming no demand, a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." *Id.* at 1155.  Although the issue here differs slightly in that the VE provided nothing more than his final numbers, whereas the VE in *Biestek*, in response to cross-examination on the issue, revealed that her numbers "came from the Bureau of Labor Statistics and her 'own individual labor market surveys,'" which were confidential, the Court's conclusion is nevertheless instructive. *Id.* at 1153.  Notably, the plaintiff in *Biestek*, who challenged the VE's calculations at the ALJ hearing, conceded that the absence of a challenge by a plaintiff would render the issue moot. *Id.* (referring to this notion as the parties' "common ground").

[and] . . . [t]hus, even when a VE's job numbers conflict with the job numbers provided by the Bureau of Labor Statistics, an ALJ has no duty to investigate or resolve this conflict." *Id.* at *7.

Similarly, the court in *Perez v. Kijakazi* held that an ALJ's decision was based on substantial evidence at step five where the ALJ relied on the VE's testimony for employment statistics, which testimony was not challenged at the time of the ALJ hearing. No. 21-cv-23740, 2022 WL 17094932, at *11 (S.D. Fla. Nov. 3, 2022), *report and recommendation adopted*, No. 21-cv-23740, 2022 WL 17093619, at *1 (S.D. Fla. Nov. 21, 2022). The *Perez* court also declined to consider the plaintiff's proffered employment statistics, noting "the Court is foreclosed from considering the new evidence presented by Mr. Perez in the Motion, and, as such, Mr. Perez has not established that the ALJ erred when she considered the VE's job estimates as substantial evidence because that is the only evidence regarding the number of jobs available in the record." *Id.* at *11. Thus, the court held that the ALJ's opinion was based on substantial evidence at step five. *Id.*; *see also Collas v. Acting Comm'r of Soc. Sec.*, No. 20-cv-1791-MCR, 2022 WL 370115, at *1, *6, *14 (M.D. Fla. Feb. 8, 2022) (holding that the ALJ's decision relying on VE testimony at step five was based on substantial evidence, and stating "an ALJ is authorized to rely on the testimony of a VE in determining the number of available jobs, and there is no requirement that the VE produce all data considered in reaching his or her conclusions") (citing *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012)).

Thus, while the VE's testimony here only offered the number of jobs available without any explanation of how the number was derived, the ALJ was still entitled to rely on it given that (1) there was no challenge made to the numbers at the ALJ Hearing, (2) Plaintiff's counsel stipulated to the qualifications of the VE, (3) no conflict was apparent from the record before the ALJ, and (4) no other evidence as to the numbers was in the record. The law is clear that absent anything

18

else on the record, an ALJ can rely on the VE's testimony. Plaintiff provides no case law stating otherwise, and the Court is not aware of any. As the record stands, the undersigned finds that the ALJ's decision was based on substantial evidence.

### III.    RECOMMENDATION

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. [8], be **DENIED**, and Defendant's Motion for Summary Judgment, ECF No. [14], be **GRANTED**.

### IV.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a de novo determination by the District Judge of anything in this Report and Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on February 12, 2024.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**